DAVID D. LIN (02846-2003)
**LEWIS & LIN, LLC**
77 Sands Street, 6th Floor
Brooklyn, NY 11201
David@iLawco.com
Tel: (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiff Christopher Torre*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHRISTOPHER TORRE,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTINA KARDOONI, and MCKAILA COULTER,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Christopher Torre ("Plaintiff" or "Mr. Torre"), through his undersigned attorneys, brings this action for damages and injunctive relief against Defendants Christina Kardooni ("Ms. Kardooni") and Mckaila Coulter ("Ms. Coulter," collectively with Ms. Kardooni as "Defendants") due to Defendants' blatant acts of defamation that wrongfully accuse Mr. Torre of abusive conduct.  Plaintiff alleges as follows.

**STATEMENT OF CASE**

1. This case arises from a malicious campaign of defamation to damage Plaintiff's career in professional wrestling on his verge of success.

2. Plaintiff is a professional wrestler who has gradually built up his name and reputation within the domestic and international professional wrestling community over the past two decades.

3. Upon information and belief, Defendants, both of whom had previously had romantic relationships with Plaintiff, knowingly and intentionally fabricated stories to attack

Plaintiff's character. Both Defendants made blatantly untrue and derogatory statements about Plaintiff on social media platforms.

4. It is of no coincidence that Defendants' defamatory statements were made soon after Plaintiff accomplished a recent achievement and breakthrough in his career, which Defendants are well aware of. Upon information and belief, Defendants' defamation campaign was launched to impede Plaintiff's professional success.

5. Defendants' defamatory statements are a detriment to Plaintiff's reputation and career. Plaintiff has suffered, and will continue suffering, great reputational and financial losses due to the ongoing and far-reaching impact of Defendants' wrongful conduct.

6. Plaintiff thus brings this action for, *inter alia*, damages and injunctive relief compelling Defendants to retract their defamatory statements and to remediate the harms done to Plaintiff's personal and professional lives due to Defendants' brazen conduct.

**PARTIES**

7. Plaintiff Mr. Torre is an individual residing in New York, New York.

8. Defendant Ms. Kardooni is an individual residing in North Highlands, California.

9. Defendant Ms. Coulter is an individual residing in New Bedford, Massachusetts.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq. and the laws of the State of New Jersey. This court also has subject matter jurisdiction, inter alia, pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

11. This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise

from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

12. Pursuant to New Jersey Civil Rule 4:4-4, consistent with due process of law, this Court has personal jurisdiction over Defendants. Defendants expressly aimed and purposefully directed their defamatory statements to residents of the State of New Jersey, knowing that the brunt of injury would be felt in New Jersey. Among other affirmative acts, Defendants launched their campaign of extortion and defamation by posting their untrue and defamatory statements about Plaintiff on social media platforms that are openly accessible by New Jersey residents. Upon information and belief, at least one New Jersey resident has perceived Defendants' defamatory statements as truthful, and thus has acted upon Defendants' defamatory statements to cause injury to Plaintiff.

13. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted allegedly occurred in this District.

## FACTUAL ALLEGATIONS

14. Mr. Torre is a highly acclaimed professional wrestler, both domestically and internationally, with his major area of business in the State of New Jersey.

15. Mr. Torre has been participating in the business of professional wrestling for two decades. He made his debut in the State of New Jersey in or around 2002, and has since been building his career and reputation around the New Jersey area.

16. Mr. Torre is known by his ring name in the industry, "Chris Dickinson."

17. Since 2014, Mr. Torre has been partnering with Game Changer Wrestling (then Jersey Championship Wrestling), a New Jersey-based independent professional

3

wrestling promotion, to participate in more wrestling matches both in New Jersey and across the nation.

18. Game Changer Wrestling ("GCW") is one of the most significant contacts and resources that Mr. Torre relies on to promote his visibility in the industry, which thereby grants him more exposure and opportunities to work with other companies and match in events held by other promotions.

19. Moreover, New Jersey has long been one of the major bases for professional wrestling business on the east coast, attracting and grounding more and more wrestlers and promotors over the years.

20. As Mr. Torre earned greater recognition in the wrestling industry, he sought to expand his career internationally. In April 2022, Mr. Torre contracted with New Japan Pro-Wrestling ("NJPW"), a Japanese professional wrestling promotion. As NJPW is the largest and longest-running professional wrestling promotion in Japan, joining NJPW was a huge step forward for Mr. Torre for gaining more visibility and popularity around the world.

21. Both Defendants had romantic relationships with Mr. Torre while Mr. Torre pursued his career in the professional wrestling industry.

22. Both Defendants knew of Mr. Torre's connections to GCW and NJPW, as well as other professional wrestling promotions, during their relationships with Mr. Torre and at the times of their publication of their defamatory statements concerning Mr. Torre, respectively.

23. Defendant Ms. Kardooni is a professional wrestler known by her ring name "Christina Von Eerie." Ms. Kardooni has also worked for several professional wrestling promotions throughout her career in the industry.

24. In or around 2014, Defendant Ms. Kardooni came into contact with Mr. Torre and formed a romantic relationship with him.

4

25. During and following their relationship, Ms. Kardooni was and still is well familiar with Mr. Torre's connections within the professional wrestling industry, including his major promotions and the major geographic area where Mr. Torre participated in matches and events.

26. In or around late 2014, Ms. Kardooni and Mr. Torre mutually agreed to break up with each other. The two remained in contact sporadically between 2014 and 2021, and the conversations between two were cordial and friendly. Ms Kardooni provided no clue or mentioning of matters that could lead to her recent campaign of defaming Mr. Torre.

27. Abruptly and unexpectedly, starting from April 27, 2022 (which was soon after Mr. Torre contracted with NJPW), Ms. Kardooni started posting untrue and derogatory statements about Mr. Torre on multiple social media platforms.

28. On or around April 27, 2022, Ms. Kardooni published or caused to be published a Twitter post via the account "Christina Von Eerie" (@CVEvil_138). As of the date of this complaint, this Twitter post remains publicly accessible at https://twitter.com/CVEvil_138/status/1519497983657537536.

29. On or around April 28, 2022, Ms. Kardooni published or caused to be published a Facebook post via the account "Christina Von Eerie." As of the date of this complaint, this Facebook post remains publicly accessible at https://www.facebook.com/TheRealCVE/posts/10228803835867899.

30. In both her Twitter post and Facebook posts, Ms. Kardooni made several untrue and defamatory statements about Mr. Torre.

31. Specifically, Ms. Kardooni brazenly accused Mr. Torre as an "abuser." Ms. Kardooni alleged that Mr. Torre inflicted "verbal, mental, and physical abuse" during their relationship. Ms. Kardooni also alleged that Mr. Torre expressed disrespect to her personally, to her career as a female professional wrestler, and to women wrestling in general. Along

5

with her accusations, Ms. Kardooni attributed several statements to Mr. Torre, all of which are of a vulgar and hostile nature, including but not limited to:

    a. "Women's wrestling is trash."

    b. "You're all a bunch of whores."

    c. "I can't believe you're getting paid that much, it makes me sick. You don't deserve that."

    d. "You're a shit stain on the wrestling business."

    e. "I hate Christina Von Eerie, and I wish she didn't exist."

32. Ms. Kardooni also falsely alleged that Mr. Torre was physically aggressive towards her and even physically assaulted her. Specifically, Ms. Kardooni posted about Mr. Torre:

> The verbal fights just kept escalating to the point that he was screaming at me, nose to nose. Veins popping out of a bright red face. He always tried to intimidate me. Puffing up and getting in my face, cornering me.
>
> Things started getting physical. He would push me, hold me down, block me from getting to the door, or even pulling me off the door and throwing me on the bed or the floor. He would throw and break things. He didn't care what it was.
>
> . . .
>
> These fights continued…yelling, pushing, holding me down, and being tossed around. It was impossible to get him off of me if he was holding me down. He was so much bigger and stronger than me. I felt so helpless sometimes, and scared that things would get more violent…and they did.

6

33. Ms. Kardooni's alarming yet false statements wrongfully depict Mr. Torre as a man of violence, while none of her alleged events ever occurred. The reality is that Mr. Torre never engaged in any forms of abuse, whether physical, verbal, or mental, either against any person. Mr. Torre also displays full respect for other women wrestlers, which is well acknowledged in the industry.

34. While publishing or causing to publish these social media posts, Ms. Kardooni made a clear association between the posts and Mr. Torre. Not only did Ms. Kardooni mention Mr. Torre by his well-known ring name "Chris Dickinson," but she also included hyperlinks to Mr. Torre's social media accounts that enable any reader to access Mr. Torre's social media pages immediately, and included the hashtag #chrisdickinson.

35. In her Facebook post, Ms. Kardooni also "tagged" two other individuals who could assert impact on Mr. Torre's career – David Marquez and Rocky Romero.

36. David Marquez is the owner/president of Championship Wrestling from Hollywood ("CWFH"). Mr. Marquez runs CWFH as a professional wrestling promotion and produces a wrestling television program under the same name. The promotion as well as the television program has been operating for more than a decade and garners wide recognition within the professional wrestling industry.

37. Rocky Romero (as a ring name for John Rivera, "Mr. Rivera") has a close business relationship with Mr. Torre. Mr. Rivera works for NJPW and runs the American side of the promotion. Mr. Rivera also manages most, if not all, of the American wrestlers contracting with NJPW. Mr. Rivera was deeply involved in the contracting process of Mr. Torre with NJPW. Even since Mr. Rivera got Mr. Torre contracted with NJPW, he has been booking Mr. Torre for NJPW events until Defendants started their defamation campaign.

38. By "tagging" Mr. Marquez and Mr. Rivera, Ms. Kardooni's Facebook post automatically notified Mr. Marquez and Mr. Rivera of the publication of such a post.

39. As of the date of this complaint, Ms. Kardooni's Twitter and Facebook posts have attracted hundreds of people's attention, and will continue attracting more attention from the general public, including more New Jersey residents, deepening Mr. Torre's reputational injury.

40. Defendant Ms. Coulter came into contact with Mr. Torre in 2014 at a wrestling event in Providence, Rhode Island. Ms. Coulter does not participate in professional wrestling, nor is she involved in any related matters. Nevertheless, Ms. Coulter has been well aware of Mr. Torre's career and connections in the industry as a professional wrestler.

41. Mr. Torre and Ms. Coulter became dating in early 2015, then the two broke up in 2018. Ms. Coulter and Mr. Torre remained in contact sporadically and maintained a friendly relationship until Ms. Coulter's recent campaign of defaming Mr. Torre.

42. Following Ms. Kardooni's social media posts, Ms. Coulter made several untrue and defamatory statements of her own concerning Mr. Torre on social media, all of which occurred abruptly and unexpected by Mr. Torre.

43. Specifically, on or around April 30, 2022, Ms. Coulter published or caused to be published a Twitter post via the account "MAC" (@McKailaMary). Ms. Coulter's Twitter post is divided into two parts, which are still publicly accessible as of the date of this complaint at https://twitter.com/mckailamary/status/1520549478121586688 and https://twitter.com/McKailaMary/status/1520549576406716421.

44. In her Twitter post, Ms. Coulter made allegations that charged Mr. Torre with "stalking" and "abusive" behavior. For example, Ms. Coulter alleged that Mr. Torre "was following [her] on a secret account" after the two broke up. She also stated that Mr. Torre committed physical violence against her, such as "pushing [her] into the wall" or "throwing a water bottle at [her]." Ms. Coulter also alleged that Mr. Torre conducted "mental abuse" without providing any basis for such statements. Ms. Coulter further implicated that Mr.

Torre engaged in extortionate behavior involving so-called revenge porn: "I know he has a file of any girl he's been involved with that has 'photos' to use against them." Last but not least, Ms. Coulter falsely claimed that "there are other victims out there" who were hurt by Mr. Torre's alleged wrongful conduct, suggesting that Mr. Torre is a routine abuser who has hurt multiple people.

45. Though not mentioning Mr. Torre's name, Ms. Coulter referenced to Ms. Kardooni's social media posts and referred to herself as another "former partner" to Mr. Torre. Ms. Coulter also made several references to the wrestling industry and Mr. Torre's "wrestling persona" in her Twitter post, which further indicates that her statements concern Mr. Torre but no other person.

46. Ms. Coulter's statements contradict the reality, because Mr. Torre never engaged in any forms of abuse, whether physical, verbal, or mental, either against any person.

47. Despite the false accusations, Ms. Coulter's Twitter post has attracted great attention from hundreds of people, many of whom have perceived Ms. Coulter's statements as true.

48. Due to the publication and dissemination of Defendants' social media posts, Mr. Torre has suffered great reputational, professional, and financial damages within the State of New Jersey.

49. In May 2022, after learning of Defendants' social media posts and the untrue statements contained therein, GCW terminated its business relationship with Mr. Torre upon an abrupt notice, without any investigation into Defendants' statements. Mr. Torre was asked to quit his scheduled events with GCW, and was then informed that GCW would stop enlisting him for events indefinitely.

50. Following GCW's cancellation of its relationship with Mr. Torre, other wrestling promotions that had commitments with Mr. Torre proceeded to terminate their

business relationships with Mr. Torre as well. After Mr. Torre finished all of his then-existing commitments, Mr. Torre was given no further dates to work or to participate in any future matches or events.

51. Specifically, when NJPW contracted with Mr. Torre in April 2022, NJPW expressed the interest of booking Mr. Torre for events in Japan and having Mr. Torre work in Japan as soon as possible. After Defendants posted their defamatory statements, NJPW told Mr. Torre to wait until further notice. Given that Mr. Torre's contract with NJPW was to be paid per appearance in events, losing the opportunities to participate in future NJPW events caused Mr. Torre's contract with NJPW to become essentially a valueless deal.

52. Furthermore, many companies quickly removed media content featuring Mr. Torre as a result of Defendants' defamatory social media posts about him. For example, Beyond Wrestling, a Massachusetts-based professional wrestling promotion, removed videos featuring Mr. Torre from its YouTube channel following Defendants' defamation campaign.

53. Since the cancellation of these events, Mr. Torre has not been able to maintain the same level of visibility or obtain further contracting or matching opportunities to compensate for his damages.

54. Furthermore, due to the dissemination of Defendants' untrue statements, many of Mr. Torre's business associates have cut off their connections to Mr. Torre in order to avoid potential reputational damages to themselves resulting from the allegations concerning Mr. Torre.

55. Mr. Torre received fees per appearance when attending matches and events with multiple promotions. Prior to Defendants' defamation campaign, Mr. Torre would be booked for fifteen to twenty events per month on average, with a total monthly earning capacity of $20,000 on average.

56. Since Defendants posted their defamatory statements, Mr. Torre has not been able to appear in any events or secure any bookings for future events for more than two and a half months, resulting in a total loss of $50,000 that will continue to grow.

57. Because of the far-reaching negative impact of Defendants' statements, Mr. Torre will suffer ongoing financial and reputational damages.

## FIRST CLAIM FOR RELIEF
### False Promotion in Violation of the Lanham Act Under 15 U.S.C. § 1125(a)(1)(B) Against Defendant Kardooni

58. Mr. Torre repeats, reasserts, and incorporates paragraphs 1–57 as if fully stated here.

59. Defendant Kardooni's publication of false and misleading statements about Mr. Torre and Mr. Torre's opinion regarding the professional wrestling industry to a relevant portion of the purchasing public, to wit, NJPW, constitutes false promotion in violation of 15 U.S.C. § 1125(a)(1)(B).

60. Defendant Kardooni's publication of false and misleading statements about Mr. Torre and Mr. Torre's opinion regarding the professional wrestling industry did actually deceive and is likely to deceive more consumers as to the nature and character of Mr. Torre and the quality of Mr. Torre's performance in the industry.

61. As a direct and proximate result of Defendant Kardooni's unlawful acts, Mr. Torre has suffered and will continue to suffer significant monetary and reputational injury in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Defamation *Per Se* Against All Defendants

62. Mr. Torre repeats, reasserts, and incorporates paragraphs 1–61 as if fully stated here.

63. Defendants intentionally defamed Mr. Torre by publishing and disseminating untrue and derogatory statements about Mr. Torre on publicly accessible social media

platforms. Defendants' defamatory statements are perceived by hundreds of third parties, including ones that have close connections to Mr. Torre, including Mr. Torre's promoters, previous promotions, other professional wrestlers, and persons working in the professional wrestling industry who have had or maintained business relations with Mr. Torre.

64. Defendants' statements about Mr. Torre are false and remain to be false as of the date of this complaint. These statements were made maliciously and willfully to discredit Mr. Torre and to portray Mr. Torre as an abusive, violent person, and a man possessing hostility towards his female contestants in the professional wrestling industry.

65. Defendants' statements about Mr. Torre falsely accused Mr. Torre of committing the serious crime of assault and battery.

66. Defendants published or caused to publish false and defamatory statements to third parties residing in the State of New Jersey with the intent to cause harm to Mr. Torre's personal and professional integrity and reputation.

67. Defendants made their statements concerning Mr. Torre with the knowledge of their falsity, and with wonton and willful disregard of the reputation and rights of Mr. Torre. Defendants seemingly made such statements based on their personal experience, while the statements contradict with real-life events that Mr. Torre and potential witnesses can attest to.

68. Furthermore, Defendants maliciously published or caused to be published such false and defamatory statements soon after Mr. Torre obtained a significant opportunity to elevate his career, with the intent to interfere and disrupt Mr. Torre's professional life.

69. The statements were made of and concerning Mr. Torre, and were so understood by those who perceived Defendants' statements.

70. Defendants have no privilege to assert the false and disparaging statements about Mr. Torre.

71. As a direct and proximate result of Defendants' unlawful, deliberate, and malicious conduct as set forth above, Mr. Torre has been, and will continue to be, damaged both irreparable and monetarily.

72. Mr. Torre has suffered a direct loss of thousands of dollars resulting from loss of business and contractual relations due to Defendants' defamatory statements.

73. Defendants' defamatory statements have an ongoing and far-reaching impact on Mr. Torre's reputation and integrity within the professional wrestling industry, which deprive Mr. Torre of potential business opportunities. As a result, Mr. Torre lacks means of compensation and continues to suffer financial harm.

74. Mr. Torre would not lose his aforementioned business opportunities but for Defendants' defamatory statements.

75. As a result of the willful and malicious nature of the defamation, Mr. Torre is entitled to punitive damages.

### THIRD CLAIM FOR RELIEF
### Tortious Interference with Contractual Relationship
### Against All Defendants

76. Mr. Torre repeats, reasserts, and incorporates paragraph 1 to 74 as if fully stated under this claim.

77. Mr. Torre had pre-existing business relationships with many professional wrestling promotions, including GCW as the most prominent one for Mr. Torre's domestic career, and NJPW as the most major promotion for Mr. Torre to increase his international visibility.

78. Both defendants know of the Mr. Torre's business relationship with GCW and Mr. Torre's contractual relationship with NJPW, as well as many other professional wrestling promotions.

13

79. Defendants purposefully disseminating untrue statements about Mr. Torre to interfere his relationships with GCW and NJPW among many other professional wrestling promotions.

80. Defendants have no privilege to disseminate their untrue statements about Mr. Torre.

81. As a direct and proximate result of Defendants' unlawful, deliberate, and malicious conduct as set forth above, Mr. Torre has suffered financial harm resulting from the disruption of his relationships with GCW and NJPW, as well as many other professional wrestling promotions.

82. Defendants' defamatory statements have an ongoing and far-reaching impact on Mr. Torre's reputation and integrity within the professional wrestling industry, which deprive Mr. Torre of potential business opportunities. As a result, Mr. Torre lacks means of compensation and continues to suffer financial harm.

83. Mr. Torre would not lose his aforementioned contractual relationships but for Defendants' defamatory statements.

## **PRAYER FOR RELIEF**

84. WHEREFORE, by reason of the acts and circumstances alleged herein, Mr. Torre seeks relief from this Court as follows:

    a. Judgment on the claim set forth above;

    b. An award of compensatory damages according to proof at trial, as well as punitive and exemplary damages where authorized;

    c. An order enjoining Defendants and those in active concert with Defendants from disseminating or publishing any further defamatory statements concerning Mr. Torre;

d. An order directing Defendants to retract their defamatory statements from any non-party who they have contacted regarding the matters alleged in this complaint;

e. An order directing Defendants to undertake such remedial efforts as the Court deems necessary to restore Mr. Torre's reputation;

f. Prejudgment and post-judgment interest at the applicable rate;

g. An award for reasonable attorney's fees, costs and disbursements, where applicable; and

h. Such other and further relief the Court deems proper and just.

Dated: Brooklyn, New York
July 22, 2022

Respectfully submitted,

LEWIS & LIN, LLC

 /s/ David D. Lin
David D. Lin (02846-2003)
77 Sands Street, 6th Floor,
Brooklyn, NY 11201
David@ilawco.com
Tel. (718) 243-9323
Fax: (718) 243-9326

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: July 22, 2022

                                                   LEWIS & LIN, LLC

                                                   */s/ David D. Lin*
                                                   David D. Lin (02846-2003)
                                                   77 Sands Street, 6th Floor,
                                                   Brooklyn, NY 11201
                                                   David@ilawco.com
                                                   Tel. (718) 243-9323
                                                   Fax: (718) 243-9326

                                                   *Attorneys for Plaintiff*