UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER TORRE,<br><br>    Plaintiff,<br>v.<br><br>CHRISTINA KARDOONI and<br>MCKAILA COULTER,<br><br>    Defendants. | Civil Action No. 22-4693 (SDW) (MAH)<br><br>REPORT AND RECOMMENDATION |

**HAMMER, United States Magistrate Judge**

Presently before the Court are Defendants Christina Kardooni ("Kardooni") and McKaila Coulters' ("Coulter") (collectively "Defendants") motions to dismiss Plaintiff Christopher Torre's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Kardooni's Mot. to Dismiss, D.E. 16; Coulter's Mot. to Dismiss, D.E. 17. Plaintiff filed opposition to both motions on October 24, 2022, and Defendants replied on October 31, 2022. Pl.'s Opp'n, D.E. 18; Kardooni's Reply, D.E. 19; Coulter's Reply, D.E. 20.

The District Court referred this matter to the Undersigned to issue a Report and Recommendation. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court has considered the motions without oral argument. For the reasons set forth herein, the Undersigned respectfully recommends that the District Court grant Defendants' Motions to Dismiss for lack of personal jurisdiction.[1]

---

[1] Additionally, Kardooni seeks to dismiss Count I of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because this Court concludes that it does not have personal jurisdiction over Defendants, the Undersigned respectfully recommends that the District Court not entertain Kardooni's motion to dismiss pursuant to Rule 12(b)(6). *Hone v. Ereaux*, No. 21-479, 2022 WL 205670, at *4 (D.N.J. Jan. 24, 2022) (citing *Lightfoot v. Cendant Mortg. Corp.*,

I. **BACKGROUND**

Plaintiff's claims stem from allegedly untrue and derogatory statements Defendants each posted about Plaintiff on social media. *See generally*, Compl., D.E. 1. The allegations set forth below are derived from the Complaint, which the Court must accept as true for purposes of a motion to dismiss for lack of personal jurisdiction. *Marten v. Godwin*, 499 F.3d 290, 295 n.2 (3d Cir. 2007) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

According to the Complaint, Plaintiff is a professional wrestler whose ring name is "Chris Dickinson." Compl., D.E. 1, ¶¶ 14-16. In 2014, Plaintiff partnered with Game Changer Wrestling ("GCW"), a New Jersey-based wrestling promotion, to advance his career "both in New Jersey and across the nation." *Id.* ¶¶ 17-19. As Plaintiff's career took off, he sought to expand it internationally. In April 2022, he contracted with a Japanese wrestling promotion company, New Japan Pro-Wrestling ("New Japan"), to gain more "visibility and popularity around the world." *Id.* ¶ 20.

Defendant Kardooni is also a professional wrestler, known by her ring name as "Christina Von Eerie." *Id.* ¶ 23.[2] Plaintiff and Kardooni began dating in 2014 but ended the relationship that same year. *Id.* ¶¶ 24, 26. In April 2022, Kardooni claimed on Twitter and Facebook that Plaintiff was abusive during their relationship, and recounted derogatory comments that Plaintiff allegedly made about women's wrestling. *Id.* ¶¶ 27-39.[3] In those posts, Kardooni mentioned

---

137 S. Ct. 553, 562 (2017) (finding a court cannot reach the merits of a case if it does not have jurisdiction over the defendant))).

[2] Plaintiff alleges that Kardooni was well aware of his wrestling career both throughout the relationship and thereafter. *Id.* ¶¶ 22, 25.

[3] *See* Compl., D.E. 1, ¶¶ 28-29 (citing https://twitter.com/CVEvil_138/status/1519497983657537536; https://www.facebook.com/TheRealCVE/posts/10228803835867899).

Plaintiff by his ring name and hyperlinked Plaintiff's social media accounts. *Id.* ¶ 34 (tagging/mentioning Twitter account "@DirtyDickinson" and Instagram account "@borndirtydiedirty"; hash-tagging "#chrisdickinson").[4] Further, Kardooni tagged individuals with ties to Plaintiff's wrestling career. *Id.* ¶¶ 35-38 (alleging that Kardooni tagged David

---

The Complaint alleges that Kardooni accused Plaintiff of making the following statements:

    (1)    "Women's wrestling is trash;"

    (2)    "You're all a bunch of wh[****];"

    (3)    "I can't believe you're getting paid that much, it makes me sick. You don't deserve that;"

    (4)    "You're a sh[**] stain on the wrestling business;"

    (5)    "I hate Christina Von Eerie, and I wish she didn't exist."

Compl., D.E. 1, ¶ 31.

Kardooni's post also alleged that Plaintiff physically assaulted her. By way of example, Kardooni posted, in part:

> The verbal fights just kept escalating to the point that he was screaming at me, nose to nose. . . . Things started getting physical. He would push me, hold me down, block me from getting to the door, or even pulling me off the door and throwing me on the bed or the floor. . . . These fights continued…yelling, pushing, holding me down, and being tossed around.

*Id.* ¶ 32.

[4] Twitter explains that "[a] mention is a Tweet that contains another person's username anywhere in the body of the Tweet," which notifies that tagged individual of the post. TWITTER, https://help.twitter.com/en/using-twitter/mentions-and-replies (last visited Nov. 18, 2022). Facebook explains, "[w]hen you tag someone, you create a link to their profile. This means that: The post you tag in may also be added to that person's timeline . . . When you tag someone, they'll be notified. Also, if you . . . tag[] someone in your post, the post could be visible to the audience you selected plus friends of the tagged person." FACEBOOK, https://www.facebook.com/help/124970597582337/?helpref=uf_share (last visited Nov. 18, 2022).

Marquez, the owner/president of Championship Wrestling from Hollywood ("CFWH"), and Rocky Romero (a/k/a John Rivera), who oversees the American side of New Japan promotions and with whom Plaintiff had a close business relationship). Kardooni's posts, Plaintiff alleges, have garnered significant readership, and will continue to do so, further injuring Plaintiff's reputation, particularly in New Jersey. *Id.* ¶ 39.

As to Defendant Coulter, Plaintiff alleges that they had a three-year relationship from 2015 to 2018. *Id.* ¶¶ 40-41. Just days after Defendant Kardooni posted to social media about Plaintiff, Coulter posted on Twitter about a "former partner." The tweet described stalking and abusive behavior. *Id.* ¶¶ 43-45.[5] Although Coulter did not mention Plaintiff by name in the posts, she referred to Kardooni and made references to Plaintiff's wrestling career. *Id.* ¶ 45. Plaintiff avers that Coulter's posts have attracted great attention and thus have caused him injury. *Id.* ¶ 47.

In sum, Plaintiff claims that Defendants' allegedly defamatory social media posts were read by many people, including individuals in the professional wrestling industry. *Id.* ¶¶ 48, 63, 66. Plaintiff also declares that he has suffered reputational harm, both personal and professional,

---

[5] *See* Compl., D.E. 1, ¶ 43 (citing MAC (@McKailaMary), TWITTER (Apr. 30, 2022, 7:43 PM), https://twitter.com/McKailaMary/status/1520549478121586688 and (Apr. 30, 2022, 7:44 PM), https://twitter.com/McKailaMary/status/1520549576406716421).

Some examples of Coulter's comments that Plaintiff contends refer to him include that he:

> (1) "'was following [her] on a secret account' after the two broke up;"
>
> (2) "committed physical violence against her, such as 'pushing [her] into the wall' or 'throwing a water bottle at [her];'"
>
> (3) "conducted 'mental abuse.'"

*Id.* ¶ 44.

4

and financial damages, in New Jersey. *Id.* ¶¶ 48-57, 66. Plaintiff alleges that one month after the posts, GCW terminated its business relationship with him. *Id.* ¶ 49. Plaintiff also asserts other companies removed wrestling videos of Plaintiff from their YouTube channels. *Id.* ¶¶ 50-52. In effect, Plaintiff avers, Defendants' social media posts have resulted in the wrestling industry blacklisting him. *Id.* ¶¶ 53, 55-57.

On July 22, 2022, Plaintiff filed a three-count Complaint. Count One alleges that Kardooni violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). *Id.* ¶¶ 58-61. Count Two alleges that Defendants *per se* defamed Plaintiff. *Id.* ¶¶ 62-75. Count Three alleges that Defendants tortiously interfered with Plaintiff's contractual relationships with wrestling promotions. *Id.* ¶¶ 76-83. Important to this dispute, Plaintiff asserts that this Court has personal jurisdiction over Defendants pursuant to New Jersey Civil Rule 4:4-4 because Defendants expressly targeted their defamatory social media posts at residents of New Jersey, knowing that Plaintiff would suffer the brunt of the harm there. *Id.* ¶ 12 (alleging that "at least one New Jersey resident has perceived Defendants' defamatory statements as truthful, and thus has acted upon Defendants' defamatory statements to cause injury to Plaintiff"). No party is a New Jersey resident. Plaintiff is a citizen of New York. *Id.* ¶ 7. Defendant Kardooni is a permanent resident of Vancouver, Canada, and maintains a residence at her parents' home in California. *Id.* ¶ 8; Kardooni's Decl., D.E. 16-1, ¶¶ 3-4. Defendant Coulter is a Massachusetts citizen. Coulter's Decl., D.E. 17-2, ¶¶ 2-4; Compl., D.E. 1, ¶ 9.

On September 26, 2022, each Defendant filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Kardooni's Mot. to Dismiss, D.E. 16-2; Coulter's Mot. to Dismiss, D.E. 17-4. Defendants primarily assert that Plaintiff has failed to satisfy his burden of proving that this Court has personal jurisdiction over

them because the social media posts do not concern New Jersey and were not expressly aimed at New Jersey. Accordingly, Defendants argue, they have not availed themselves of the laws of the forum state. Kardooni's Mot. to Dismiss, D.E. 16-2, at 12-16; Coulter's Mot. to Dismiss, D.E. 17-4, at 10-13. Defendants also argue that even if they somehow had minimum contacts with the forum state, this Court's exercise of jurisdiction over them would violate Due Process. Kardooni's Mot. to Dismiss, D.E. 16-2, at 16-17; Coulter's Mot. to Dismiss, D.E. 17-4, at 14.

In opposition, Plaintiff contends that jurisdiction is proper because Defendants targeted the forum state of New Jersey by directing their social media posts at the wrestling industry. While Plaintiff concedes the wrestling industry is at the core of his career, he argues that the industry has a presence in New Jersey. Pl.'s Opp'n, D.E. 18, at 7-9. Additionally, Plaintiff argues that the Court's exercise of jurisdiction over Defendants would comport with Due Process because litigating the matter in New Jersey would not inconvenience the Defendants, and because Plaintiff suffered damages in, and has deep connections to, the forum state. *Id.* at 9-11.

In reply, Defendants argue primarily that Plaintiff has not proven that they expressly aimed their tortious conduct—the allegedly defamatory social media posts—at New Jersey. Kardooni's Reply, D.E. 19, at 7-12; Coulter's Reply, D.E. 20, at 4-7.

## II.   DISCUSSION

A decision regarding a motion to dismiss is dispositive. *See Thomas v. Vinculum Grp. Ltd.*, No. 15-3194, 2015 WL 13504683, at *1 (D.N.J. Dec. 23, 2015) (stating Magistrate Judges may submit Reports and Recommendations to the district court on motions to dismiss for lack of personal jurisdiction). Accordingly, this Court addresses Defendants' motions via Report and Recommendation.

### A. Personal Jurisdiction

Where a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Procedure 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, that personal jurisdiction is proper over the moving party.  *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998); *DePaco v. Cofina Media, SA*, No. 21-14409, 2022 WL 3646616, at *2 (D.N.J. Aug. 24, 2022).  Where a court does not hold an evidentiary hearing on the motion to dismiss, as is the case here, the plaintiff need only establish a prima facie case of personal jurisdiction.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Unlike a motion to dismiss for failure to state a claim, a plaintiff may not rely solely on pleadings for contests of personal jurisdiction, but must establish jurisdictional facts through sworn affidavits or other competent evidence.  *See, e.g., Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984); *Sciore v. Phung*, No. 19-13775, 2022 WL 950261, at *4 (D.N.J. Mar. 30, 2022) (quoting *Weber v. Jolly Hotels*, 977 F. Supp. 327, 331 (D.N.J. 1997)).  The Court, at the same time, must draw a plaintiff's allegations as true, and all factual disputes in their favor.  *Miller Yacht Sales, Inc.*, 384 F.3d at 97 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)).

A district court generally exercises personal jurisdiction according to the law of the state in which it sits.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Marten*, 499 F.3d at 296.  The exercise of personal jurisdiction is normally a two-part inquiry,[6] but because New Jersey state law provides for jurisdiction to the fullest extent permitted by the

---

[6] There must be a state statutory basis for exercising jurisdiction over a non-resident defendant as well as a constitutional basis whereby the minimum contacts between the non-resident and the forum state satisfy due process under the Fourteenth Amendment.  *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

United States Constitution, the court's inquiry into whether personal jurisdiction exists over a non-resident defendant concerns only questions of due process. *Carteret Sav. Bank, FA*, 954 F.2d at 145; *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971).

Personal jurisdiction may be exercised under two distinct theories: general or specific jurisdiction. *Marten*, 499 F.3d at 296; *O'Connor*, 496 F.3d at 317. Plaintiff first attempts to argue that this Court has general jurisdiction over the Defendants. But Plaintiff's showing is plainly insufficient.[7] Thus, the Court's inquiry boils down to whether it may assert specific personal jurisdiction over the Defendants. On this score, Plaintiff does not argue that the Defendants' contacts with New Jersey satisfy the traditional three-step analysis for specific jurisdiction.[8] Instead, Plaintiff relies on *Calder v. Jones*, 465 U.S. 783 (1984), to argue that the

---

[7] Defendants lack the necessary "continuous and systematic" contacts with New Jersey for them to be subject to general personal jurisdiction in the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). With respect to Kardooni, Plaintiff's declaration that he believed she "was going to New Jersey for a wrestling event" in September 2021 falls well short of satisfying that standard. *See* Pl.'s Decl., D.E. 18-1, ¶ 13. Even if the trip occurred, a single trip to New Jersey cannot, by its very definition, constitute "continuous and systematic contacts." As to Coulter, Plaintiff's declaration that she "attended wrestling events in New Jersey" with him while they were dating, *id.* ¶ 15, also fails to satisfy the general personal jurisdiction standard. First, the assertion that an individual attended sporadic events, without more, by itself is insufficient to constitute continuous and systematic contacts. Moreover, Coulter declares she has not been in New Jersey in more than four years. Coulter Decl., D.E. 17-2, ¶¶ 9-10.

[8] In the traditional, three-step personal jurisdiction analysis, courts analyze the defendant's "minimum contacts" to determine whether: (i) defendant "purposely directed" activities at the forum state; (ii) plaintiff's core claim arises out of or relates to "at least one of those specific activities;" and (iii) exercising jurisdiction over the non-resident defendant "comport[s] with fair play and substantial justice." *Marten*, 499 F.3d at 296; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries 'that arise out of or relate to' those activities.") (internal citations omitted).

In an abundance of caution, the Court also considers Defendants' argument that the Court may not assert personal jurisdiction over them because, as nonresidents of the forum state of New

Court has specific personal jurisdiction over Defendants based on the effects Defendants social media statements had on Plaintiff in New Jersey.[9]  Because the specific personal jurisdiction analysis turns on Defendants' social media posts, the *Calder* effects test is the appropriate framework.  Counts Two and Three are alleged against both Defendants, but based on different social media posts.  Therefore, the Court will scrutinize specific jurisdiction as to each Defendant separately.  See *DePaco*, 2022 WL 3646616, at *4 n.2; *Miller*, 384 F.3d at 95 n.1 (citing *Calder*, 465 U.S. at 790).[10]

### B.  *Calder* Effects Test

Courts in the Third Circuit apply the *Calder* effects test where personal jurisdiction is predicated on a defendant's tortious conduct, as Plaintiff's claims are here.  In *Calder*, the plaintiff, an entertainer residing in California, sued two Florida residents for libel based on an article they co-authored, which was published in the National Enquirer.  465 U.S. 783.  The Supreme Court found that the Florida-based defendants had aimed their tortious conduct at the forum state of California because the allegedly defamatory article was focused on California, the

---

Jersey, they lack sufficient minimum contacts with that State.  The Court agrees.  None of the parties live in New Jersey.  The Defendants have had little, if any, contacts with New Jersey.  The defamatory social media posts make no mention of the State of New Jersey.  Instead, these posts were posted on platforms that have a nationwide audience.  The fact that at least one New Jersey resident read the posts does not change the Court's analysis.

[9] "The effects test and traditional specific jurisdiction analysis are different, but they are cut from the same cloth." *Marten*, 499 F.3d at 297.  As such, courts may use either, or both tests to analyze a defendant's contacts.  See *id.* at 296–97 (not considering traditional test because defendants only argued *Calder*); *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454–55 & n.6 (3d Cir. 2003) (considering both *Calder* and traditional test).

[10] Plaintiff's False Promotion claim in violation of the Lanham Act against Kardooni, Compl., D.E. 1, ¶¶ 58-61, is considered with the defamation and tortious interference claims against her, as all are governed by the *Calder* effects test.  See *Intellect Design Arena, Inc. v. DataCubes Inc.*, No. 19-12184, 2020 WL 2832568, at *4 (D.N.J. June 1, 2020) (applying the *Calder* effects test to a false advertising claim under 15 U.S.C. § 1125(a)(1)(B))).

magazine had a circulation in California of 600,000, nearly twice as many as the next state, defendants relied upon sources located in California for their article, and the Hollywood industry created the requisite nexus in California. *Id.* at 785-89.

To establish minimum contacts under the *Calder* effects test, a plaintiff must show that the: (i) defendant committed an intentional tort; (ii) plaintiff felt the brunt of the harm of the intentional tort in the forum state; and (iii) defendant expressly aimed the tortious conduct at the forum state, making the forum state the focal point of the tortious activity. *Marten*, 499 F.3d at 297 (quoting *IMO Indus., Inc.*, 155 F.3d at 265-66); *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001). The Third Circuit has cautioned that the effects test is to be applied narrowly: "At a minimum, [Plaintiff] must allege facts that establish that defendants 'expressly aimed' their conduct" at the forum state. *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010). Courts need not consider the first two elements if the third element is not met. *Marten*, 499 F.3d at 297.

A plaintiff carries an onerous burden in proving that a defendant "expressly aimed" their conduct at the forum state. To do so, a plaintiff must (1) show that the defendant knew that the plaintiff would feel the thrust of the tortious conduct in the forum; and (ii) specifically point to activity that indicates the defendant expressly and intentionally targeted the tortious conduct at the forum. *Id.* at 297-98 (quoting *IMO Indus., Inc.*, 155 F.3d at 265-66). Many circuits, including the Third Circuit, "require[] more than a finding that the harm caused by the defendant's intentional tort is primarily felt within the forum." *IMO Indus., Inc.*, 155 F.3d at 256 (holding that *Calder* effects test will be satisfied only if the plaintiff establishes that the defendant made the forum the focal point of the tortious activity) (collecting cases). For example, the Third Circuit has found that "the mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient

10

to satisfy *Calder*." *See id.* at 263. Similarly, the mere placement of content on the Internet, by itself, does not subject the poster to personal jurisdiction in any state in which someone accesses that content. *Triestman v. Tuerkheimer*, No. 17-8187, 2018 WL 2433595, at *3 (D.N.J. May 11, 2018) (quoting *Young v. New Haven Advoc.*, 315 F.3d 256, 263 (4th Cir. 2002));[11] *but see Goldfarb v. Kalodimos*, 539 F. Supp. 3d 435, 452-53 (E.D. Pa. 2021) (holding that the defendant expressly aimed his Twitter posts at the forum state of Pennsylvania because he (i) knew that plaintiff was affiliated with a university in the forum state; (ii) attended that university himself; (iii) refers to the university in his tweets; and (iv) references events that occurred in Pennsylvania while he was in the forum). Absent showing that the defendant intentionally targeted and focused their conduct at the forum, the plaintiff will fail to establish personal jurisdiction under the effects test. *Marten*, 499 F.3d at 298. The Undersigned analyzes each Defendant in turn to determine whether Plaintiff has carried his burden of establishing personal jurisdiction over Kardooni and/or Coulter.

---

[11] "[M]erely posting a defamatory statement about the plaintiff online is not enough to hale the poster into the state where the plaintiff resides; instead, the poster's conduct must have involved the plaintiff's state in some additional way." *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 857 (E.D. Mich. 2019) (citing *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007)). "For instance, the internet posting might be of more interest to people in the plaintiff's state than nationally. Or . . . the post might be of no special interest to those in the plaintiff's state but the poster makes special effort to publicize the poster there." *Id.* at 857-58; *see also Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060-61 (E.D. Mich. 2015) (finding the exercise of personal jurisdiction improper over non-Michigan resident who posted allegedly defamatory content on Instagram and Twitter, despite plaintiff's feeling harm in the forum state, and despite defendant having property interests in the forum state, because plaintiff could not establish that defendant's posts were expressly aimed at or disseminated in the forum state, nor was there any allegation that defendant "took affirmative steps to direct the posts to a Michigan audience").

### *i. Defendant Kardooni*

As noted above, Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendants, and must persuade the Court with competent evidence, *IMO Indus., Inc.*, 155 F.3d at 257, not just his pleadings, *Time Share Vacation Club*, 735 F.2d at 66 n.9. But even considering the social media posts referenced in the Complaint, and Plaintiff's Declaration, Plaintiff has provided no reliable basis to conclude that Kardooni directed her purportedly defamatory social media posts at New Jersey, or at Plaintiff in New Jersey.

Plaintiff's twenty-three-paragraph Declaration focuses on various methods by which the parties are connected to New Jersey. Pl.'s Decl., D.E. 18-1. More specifically, Plaintiff declares that (i) his professional wrestling career started and was based, to some extent, in New Jersey, and Kardooni knew that fact, *id.* ¶¶ 2-5, 12; (ii) the individuals Kardooni tagged in her posts, David Marquez and John Rivera, are his business connections in the wrestling industry and regularly promoted or participated in events in New Jersey, *id.* ¶¶ 7-10, 12; (iii) others have reached out to Plaintiff about the posts, *id.* ¶ 18; and (iv) Plaintiff was terminated from wrestling promotions with GCW and elsewhere and has not been able to obtain any promotional opportunities, *id.* ¶¶ 19-23. The thrust of Plaintiff's argument, then, is that Kardooni's social media posts targeted New Jersey because Plaintiff has felt the effects of those posts to his wrestling career, which he alleges was based largely in New Jersey. Pl.'s Opp'n, D.E. 18, at 7-8.

In support of jurisdiction, Plaintiff first asserts that Kardooni knew that Plaintiff focused his professional wrestling career, and had ties to various wrestling promotions such as GCW and New Japan, in New Jersey. *Id.* at 8; Pl.'s Decl., D.E. 18-1, ¶ 12. Plaintiff, however, offers very little on this issue, and even less to establish that Kardooni targeted New Jersey with her social media posts. *See* Pl.'s Decl., D.E. 18-1, ¶¶ 6, 12 (reiterating only that Kardooni knew he

12

sometimes worked in New Jersey). That Kardooni knew Plaintiff sometimes worked in New Jersey, without more, is not sufficient for Plaintiff to carry his burden of showing that Kardooni targeted the allegedly defamatory posts at New Jersey. *See, e.g., DePaco*, 2022 WL 3646616, at *4 (finding that a defendant's awareness of the plaintiff's residence in the forum state is not enough); *IMO Indus., Inc.,* 155 F.3d at 266 ("While knowledge that the plaintiff is located in the forum is necessary to the application of *Calder*, . . . it alone is insufficient to satisfy the targeting prong of the effects test."). Plaintiff admits that his connections with various wrestling promotions were nationwide as well as in the "New Jersey area." Pl.'s Decl., D.E. 18-1, ¶ 12. He also admits that his career spanned "across the country," and was even set to take off internationally. *Id.* ¶ 4 ("I am known by my ring name . . . both within New Jersey and across the country."), ¶ 5 (stating that GCW helped Plaintiff participate in events in New Jersey and "across the nation"); Compl., D.E. 1, ¶¶ 20, 51 (contracting with New Japan to "gain[] more visibility and popularity around the world" and "for events in Japan"), ¶ 52 (stating that a Massachusetts-based professional wrestling promotion removed wrestling videos of Plaintiff). Thus, the Court cannot conclude that Kardooni targeted New Jersey, much less targeted Plaintiff in New Jersey, with her social media posts sufficient to establish personal jurisdiction over her.

Plaintiff also posits that Kardooni targeted the forum because New Jersey is a professional wrestling hub and therefore its residents likely had interest in Plaintiff's wrestling career. Pl.'s Opp'n, D.E. 18, at 7-8. This statement is too vague and speculative to be of much value in the *Calder* analysis. Plaintiff does not supplement his bald assertion with any credible evidence, either in his Declaration or otherwise, that New Jersey residents have any greater interest in professional wrestling than any other state, much less that such interest impelled Kardooni to target New Jersey. The Court allows that at least some New Jersey wrestling fans

probably read Kardooni's defamatory statements. Compl., D.E. 1, ¶ 12. But Plaintiff fails to show that Kardooni targeted her posts to reach New Jersey in particular, much less targeted New Jersey wrestling fans. Even Plaintiff admits that the social media posts attracted "attention from the general public, *including* New Jersey residents." *Id.* ¶ 39 (emphasis added). Plaintiff simply points out that New Jersey may have wrestling fans, some of which may have an interest in his career. That, without more, is not enough for this Court to assert personal jurisdiction. *Remick*, 238 F.3d at 259 ("Significantly, [Plaintiff] has not asserted that [the forum state] has a unique relationship with the boxing industry, as distinguished from the relationship in *Calder* between California and the motion picture industry, with which the *Calder* plaintiff was associated.").

Plaintiff's argument on this issue is similar to the plaintiff's argument in *DePaco*. In *DePaco*, the defendants published an article about the plaintiff on a website, *Sabado*, and in a weekly paper edition of the magazine. 2022 WL 3646616, at *4. The plaintiff contended that New Jersey has a large Portuguese-American population, which provided a substantial readership base of the *Sabado* magazine. *Id.* Nevertheless, the *DePaco* court held that the allegation of the existence of a large population/fanbase in New Jersey was insufficient to prove that the defendants expressly targeted New Jersey, particularly because defendants did not publish or distribute the newspaper in New Jersey. *Id.* The same reasoning applies here. That some individuals in New Jersey read Kardooni's posts because of their interest in the wrestling industry, without more, does not satisfy the *Calder* effects test. *See id.* (citing *Remick*, 238 F.3d at 259).

Plaintiff further alleges that Kardooni expressly targeted New Jersey by tagging two individuals in her social media posts who were closely associated with his wrestling career. Pl.'s Opp'n, D.E. 18, at 8. Specifically, Plaintiff declares that David Marquez with CWFH, and John

14

Rivera with New Japan, promote events regularly in New Jersey. Pl.'s Decl., D.E. 18-1, ¶¶ 6-10. Save for these conclusory assertions, however, Plaintiff fails to prove that these individuals are connected to New Jersey. There is no indication that either individual or their respective entities routinely conduct business in New Jersey. Kardooni maintains that Marquez is an individual based in Hollywood, California, which is unsurprising from the company name, Championship Wrestling from Hollywood. Kardooni's Reply, D.E. 19, at 8. Moreover, even though Plaintiff contracted with Rivera to work with New Japan, Plaintiff acknowledges that New Japan was interested in booking Plaintiff "for events in Japan." Compl., D.E. 1, ¶¶ 51, 77 (contracting with New Japan "to increase his international visibility"). Therefore, Plaintiff has failed to show that by tagging either Marquez or Rivera, Kardooni specifically directed the social media posts to New Jersey. *See Marks*, 369 F. App'x at 370-71 (finding that plaintiff failed to allege that defendants "distributed their news release to specific media organizations based in" the forum state). Nor does Plaintiff assert that Kardooni tagged them while they were in New Jersey. *Marten*, 499 F.3d at 298 (stating that "nothing in the record indicates that defendants made defamatory statements or sent defamatory material to anyone in" the forum state and that "where defendants aimed their defamatory statements is jurisdictionally significant"). At most, the Court may infer that Kardooni sought to impact Plaintiff's wrestling career generally by tagging Marquez and Rivera. But Plaintiff has fallen well short of establishing that Kardooni expressly aimed her conduct at New Jersey. *Marks*, 369 F. App'x at 371 (collecting cases).

Lastly, Plaintiff asserts that the effects of Kardooni's social media posts were largely felt, both professionally and personally, in New Jersey. For example, Plaintiff declares, "[a]fter GCW's cancellation of my bookings, other wrestling promotions that I previously had commitments with also terminated their relationships with me. . . . I still cannot obtain any

15

promotion opportunities equivalent to the ones that GCW granted me, either in the New Jersey area or nationwide." Pl.'s Decl., D.E. 18-1, ¶¶ 22-23. But that assertion, even if true, is not particularly relevant to the specific personal jurisdiction analysis. The *Calder* effects test concerns a *defendant's* contacts with the forum and the relationship between those contacts and the claims at issue. *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) (finding that plaintiff must show the "defendant's contacts with the forum State itself, not . . . with persons who reside there" and that "the plaintiff cannot be the only link between the defendant and the forum"); *Weerhandi v. Shelesh*, No. 16-6131, 2017 WL 4330365, at *5 (D.N.J. Sept. 29, 2017) (finding no personal jurisdiction where plaintiff had failed to show that the defendants' defamatory comments "had any effect in the forum beyond their effect on him"); *DeRosa v. McKenzie*, No. 16-7516, 2017 WL 1170827, at *7 (D.N.J. Mar. 27, 2017) (finding that injury to a plaintiff's professional reputation in the forum is necessary to confer jurisdiction, but not sufficient). Although Plaintiff's Declaration may establish that Kardooni sought to harm Plaintiff's reputation, it does not establish that Kardooni directed her activities at New Jersey.

The Third Circuit has explained that a plaintiff seeking to establish specific jurisdiction in a particular forum must present facts establishing that the defendant aimed her tortious conduct at that forum, knowing that the plaintiff would suffer harm there. *Marten*, 499 F.3d at 298-99. Plaintiff has not made the requisite showing. Kardooni, a permanent resident of Vancouver, Canada, who also maintains her parents' residence in California, posted allegedly defamatory statements on social media about Plaintiff, a New York resident. The record before the Court shows that while Plaintiff may have suffered reputational harm to some extent in New Jersey, Kardooni did not target the forum state with her social media posts. That the posts were placed on the Internet, without more, is never sufficient to subject that individual to the personal

16

jurisdiction of the court of the forum state. *See Triestman*, 2018 WL 2433595, at *3. None of the posts mention New Jersey. Instead, the posts are directed at Plaintiff, and largely describe the parties' tumultuous relationship, which ended in 2014, and which largely took place in New York. Kardooni's Decl., D.E. 16-1, ¶¶ 10-14. Additionally, Kardooni posits that the social media posts reference individuals and businesses *outside* of New Jersey. Kardooni's Reply, D.E. 19, at 9-10 (stating that the posts reference: (i) Marquez and Romero, whose businesses are based in California and Japan, respectively; and (ii) wrestling organizations located in Pennsylvania (Dragon Gate USA) and Connecticut (Evolve)). Unlike *Calder*, where the out-of-state defendant expressly targeted California because it was "the focal point both of the story and of the harm suffered," 465 U.S. 789, New Jersey is not the focal point of the allegedly defamatory statements. Plaintiff has therefore failed to meet his burden of proving that Kardooni expressly aimed her tortious conduct at the forum state under the *Calder* effects test. *See DePaco*, 2022 WL 3646616, at *2, *4. Thus, the Undersigned respectfully recommends that the District Court dismiss the Complaint for lack of personal jurisdiction as to Defendant Kardooni.

### ii. Defendant Coulter

Plaintiff similarly fails to establish that this Court may exercise specific personal jurisdiction over Defendant Coulter. Under the *Calder* effects test, specifically under the "expressly aimed" prong, Plaintiff argues that Coulter referenced the wrestling industry and Plaintiff's wrestling persona in her allegedly defamatory posts, "show[ing] her intention to direct her readers' attention not only to Plaintiff's private life but also to his career in the wrestling industry, which is well-based in New Jersey." Pl.'s Opp'n, D.E. 18, at 8. Even if that rationale could satisfy the *Calder* effects test, Plaintiff offers very little to support it. For example, Plaintiff declares that Coulter knew that his professional wrestling career, and his business

17

connections therein, were based in New Jersey and nationwide.  Pl.'s Decl., D.E. 18-1, ¶ 15.  Plaintiff also declares again that Coulter's posts reached a broad audience and that individuals contacted him about the posts.  *Id.* ¶ 18.  Lastly, Plaintiff declares that his professional wrestling career has suffered by virtue of the posts.  *Id.* ¶¶ 19-23.

      First, that Coulter knew Plaintiff sometimes worked in New Jersey is plainly insufficient for this Court to exercise jurisdiction over her.  *See IMO Indus., Inc.*, 155 F.3d at 266; *see also supra* pp. 12-13.  Second, that individuals contacted Plaintiff about the posts is likewise insufficient, absent showing that Coulter aimed the posts at those individuals with the intention that the posts reach New Jersey.  *See Marks*, 369 F. App'x at 370-71; *Marten*, 499 F.3d at 298.  Unlike Kardooni, Coulter did not tag anyone in her posts.  Additionally, Coulter asserts that she "did not message, digitally, telephonically, or electronically, anyone in New Jersey" about the posts.  Coulter's Reply, D.E. 20, at 7.  Third, assuming for the sake of argument that Coulter's posts negatively impacted Plaintiff's career, it is insufficient under *Calder* to establish jurisdiction in New Jersey.  As noted above, the focus must be on the defendant's activity and where it occurred and was directed.  Even if the Court accepts Plaintiff's assertion that his career was based largely in New Jersey, Plaintiff would have to establish that the alleged tortfeasor deliberately or knowingly targeted the forum state with her posts.  *IMO Indus., Inc.*, 155 F.3d at 263.  Plaintiff has made no showing that Coulter directly or indirectly targeted New Jersey with her posts.  *See Remick*, 238 F.3d at 259 (holding that allegedly defamatory letter read by individuals in the forum state did not target anyone other than the plaintiff and thus, any resulting harm in the forum state was "merely incidental"); *Weerahandi*, 2017 WL 4330365, at *5 (collecting cases) ("It is not sufficient that a defendant was aware a plaintiff would be harmed in

the forum."). To the contrary, Plaintiff himself admits his career consisted of nationwide events and promotions, and was set to take off internationally. *See supra* page 13.

The factors that the *Calder* Court applied to assess specific personal jurisdiction do not support this Court's exercise of personal jurisdiction over Coulter in New Jersey. Coulter, a Massachusetts resident, posted allegedly defamatory statements on the Internet, purportedly about Plaintiff, a New York resident. Unlike Kardooni's posts, Coulter's posts do not tag Plaintiff. Coulter's posts do not reference Plaintiff by name, nor do they seem to target New Jersey, or Plaintiff's activities *vel non* in New Jersey. Rather, Coulter's posts on social media are aimed at the general public. *See* Coulter's Reply, D.E. 20, at 7 ("The tweets . . . are aimed at people in need of assistance going through a cycle of domestic violence."). New Jersey is not the focal point of the allegedly defamatory statements. *Id.* Accordingly, the Court lacks personal jurisdiction over Defendant Coulter as well.[12]

### III.    CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court grant Defendants' motions to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Undersigned further recommends that the District

---

[12] By Order on November 21, 2022, the Undersigned invited the parties to file letter briefs addressing "whether this Court, if it finds that it lacks personal jurisdiction, shoulder transfer the matter in lieu of dismissal, and the appropriate transferee district," under 28 U.S.C. § 1631. Text Order, Nov. 21, 2022, D.E. 21. No party has responded. Additionally, it is not clear whether and to where transfer under § 1631 would be appropriate in this matter. Section 1631 contemplates transfer as a cure for lack of jurisdiction. But no transfer of this case to a single district would cure the lack of jurisdiction. The parties are residents of different states. Plaintiff resides in New York. Defendant Coulter resides in Massachusetts. Defendant Kardooni resides in both California and Canada. Therefore, it does not appear, nor have the parties established, that transfer to any one district would cure want of jurisdiction over all Defendants.

Court not consider Defendant Kardooni's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See supra* page 1 n.1.

The parties have fourteen (14) days to file and serve objections to this Report and Recommendation.  *See* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(2).

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**DATED:** November 29, 2022